1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANASTASIA MAXWELL,

       Plaintiff,

  v.

CITY AND COUNTY OF SAN FRANCISCO,

       Defendant.
_____/

No. C 07-05598 CW

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

    In this employment discrimination case, Plaintiff Anastasia
Maxwell sues Defendant City and County of San Francisco for race
and sex discrimination.  Defendant has filed a motion for summary
judgment arguing that Plaintiff's claims are not supported by
admissible evidence.  Defendant asserts that each disciplinary
measure taken against Plaintiff was supported by legitimate non-
discriminatory reasons.  Plaintiff Anastasia Maxwell opposes the
motion.  Having considered all of the papers filed by the parties
and oral argument on March 5, 2009, the Court grants Defendant's
motion.

BACKGROUND

    Plaintiff has worked for Defendant since August, 2000 as an
Apprentice Plumber.  Specifically, she works for the City
Distribution Division (CDD) of the San Francisco Public Utilities

**United States District Court**
For the Northern District of California

Commission (PUC).  The PUC is a city department that provides water, wastewater and municipal power services to San Francisco.

Between August, 2000 and December, 2002, Plaintiff was disciplined numerous times at work, including: (1) in March and April, 2001 Plaintiff was counseled several times for using city trucks without permission, (2) in January, 2002, Plaintiff received a three-day disciplinary suspension for being insubordinate to her supervisors when she was belligerent and confrontational during a conversation about overtime, (3) in June, 2002, Plaintiff received a letter of instruction reprimanding her for not following various PUC policies and procedures and (4) in September, 2002, Plaintiff received a notice of a recommendation of a fifteen-day disciplinary suspension based on repeated warnings about not wearing proper safety clothing on the job, not following proper safety protocol and not following proper procedure regarding calling in to the main office while on standby assignment.[1]  Majoulet Dec. ¶ 10-14. Plaintiff claims that, while she was disciplined numerous times between 2000 and 2002, "her white male coworkers had no problems." Opposition at 7.  Plaintiff also stated that she felt ridiculed one day during this time period, July 12, 2002, when one of her supervisors, Robert Majoulet, showed her co-workers photographs of her while working.  She argues that Majoulet "only takes pictures of women at work, not men."  Opposition at 8.[2]

In August, 2002, Plaintiff filed a complaint with the Equal

---

[1]A hearing officer subsequently recommended a written warning instead of a fifteen-day suspension.

[2]Plaintiff cites her deposition testimony to support this contention; however, the pages she cites do not discuss this incident.  Therefore, the Court does not consider it as evidence.

**United States District Court**
For the Northern District of California

Employment Opportunity (EEO) Unit at the PUC in which she asserted that her discipline charges were discriminatory.  Cole Dec. ¶ 8. At the same time, Plaintiff filed a similar charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).  Id.  These complaints were consolidated and addressed in a mediation facilitated by the EEOC.  The mediation resulted in a negotiated settlement agreement in which Plaintiff agreed to

> release [the City] and any of its officers, agents, employees, attorney [sic], successors, and assigns from any and all state and federal claims s/he has or may have against [the City] arising in any way out of his/her employment with [the City] including known or unknown claims up to the date of the signing of this Agreement.

Cole Dec. ¶ 10, Ex. E.  As part of the agreement, Defendant removed the documentation of various disciplinary actions from Plaintiff's personnel file and agreed to participate in a "team development session" with Plaintiff.  Cole Dec. ¶ 11.  After the session, one of Plaintiff's supervisors in attendance, John Mercurio, tore up his certificate for attending the session and remarked that the "certificate was not worth the paper it was written on."  Maxwell Dec. § 57.

     In May, 2003, Plaintiff received a written reprimand for improperly using PUC vehicles.  Majoulet Dec. ¶¶ 17-18.  In December, 2003, Plaintiff received a five-day suspension because she took long lunch breaks, was not present at her post during business hours, took extensive time to complete relatively easy tasks and reported to work late.  Id.  In October, 2004, Plaintiff received a twenty-day suspension based on two incidents.  Id. at ¶ 22.  In the first incident, Plaintiff was involved in a verbal

United States District Court
For the Northern District of California

1  altercation with her supervisors regarding vacation sign-up.  Id.

2  at ¶ 21.  In the second incident, Plaintiff left her post without

3  permission and engaged in a verbal altercation with two Department

4  of Parking and Traffic employees.  Id.

5      In January, 2004, Plaintiff filed a second complaint with the

6  EEO, in which she asserted that her December, 2003 suspension was

7  motivated by race and sex discrimination.  Cole Dec. ¶ 12. Exh. F.

8  An internal investigation ensued and the investigator concluded

9  that Plaintiff's race or sex did not play a role in the

10 disciplinary actions taken against her.  Id. at ¶ 13-15.

11     In December, 2004, one of Plaintiff's supervisors recommended

12 that Plaintiff be suspended for another thirty days because

13 Plaintiff was not at work when she should have been and her time

14 card was inaccurate.  Barry Dec. ¶ 15.  At a Skelly conference[3] on

15 December 22, 2004, CDD Manager Kevin Barry discussed alternatives

16 to the thirty-day suspension.  Id. at ¶ 17.  Instead of being

17 formally disciplined at the hearing, Plaintiff signed an agreement

18 that she would work directly with Mr. Barry if similar issues arose

19 in the future and that she would follow all PUC policies, paying

20 special attention to those concerning timeliness, insubordination

21 and verbal confrontations.  Id. at ¶ 17-19.  Mr. Barry agreed to

22 meet with Plaintiff once a month to discuss all job related issues.

23 Id. at ¶ 18-20.

24     In March, 2006, Mr. Barry became aware that scrap metal was

25 being stolen from the CDD yard.  Id. at ¶ 22.  He distributed a

26 _____

27    [3]A Skelly conference refers to a meeting required under Skelly
v. State Personnel Bd; 15 Cal. 3d 194 (1975), and it occurs when a
28 public employee faces a potential deprivation of his or her
property interest as an employee.

4

memo to all CDD employees that month which clarified that all scrap
metal belongs to Defendant and cannot be taken for personal use.
Id. at ¶ 23.   The memo noted that taking scrap metal was considered
"theft" and could be punished by termination.   Id.   In May, 2006,
another of Plaintiff's supervisors, Robert Majoulet, held a "safety
tailgate" meeting for all employees during which the memo was
distributed and discussed.   Majoulet Dec. ¶ 25.

Three months later, on June 26, 2006, Mr. Barry observed that
Plaintiff had a large amount (approximately 108 pounds of 30 to 40
foot rolls) of new and scrap copper piping in the trunk of her
personal car.   Barry Dec. ¶ 27.   Mr. Barry informed Human Resources
of this incident.   Id. at ¶ 30.   After an investigation, the Human
Resources Director for PUC, Michelle Modena, decided to terminate
Plaintiff.   Id., Ex. L.   On August 21, 2006, Ms. Modena issued
Plaintiff a written notification of the termination.   Id.
Plaintiff grieved this decision and, after having been terminated
for eighteen months, was reinstated as a Plumber Apprentice as a
result of a third-party arbitrator's decision.   Id., Ex. C.   The
arbitrator concluded that Plaintiff "violated the City's policy
regarding scrap material, but she did not have the wrongful intent
necessary to establish that she misappropriated City property.
Rather, through her own negligence the Grievant was under the
belief that she was entitled to retain scrap copper for her own
use."   Id.   The arbitrator converted Plaintiff's termination into
an eighteen-month period of unpaid leave.   Id.

On March 13, 2008, Plaintiff returned to work for the PUC, but
at a different division than previously.   The Superintendent at the
Water Supply and Treatment Division in Millbrae ran a training

rotation system in which workers would alternate among three divisions of the PUC: Pipelines, Services and Sunol.  Sutter Dec. ¶ 10-11.  As part of the rotation program, Plaintiff was transferred to Sunol in June, 2008.  Id. at ¶ 13.  Plaintiff asked to stay in Sunol rather than rotate to another location.  Id. at ¶ 14.  Plaintiff's request was denied because the rotation program was mandatory for all plumbers and apprentices who had not worked in every division.  Id.

Meanwhile, on March 10, 2008, three days before Plaintiff had returned to work, the PUC, pursuant to an agreement with union Local 38, decided to promote a class of Apprentice Plumbers to Utility Plumbers.  Debellis Dec. ¶ 24.  Defendant notes that Plaintiff was not eligible for the promotion because she was considered terminated when the PUC made its promotion decisions. Id. at ¶ 26.

Plaintiff denies any wrongdoing with respect to all of the incidents described above that resulted in disciplinary actions. She counters that every disciplinary action was part of a systematic effort to force her from her employment.  Maxwell Dec. ¶ 94.  Plaintiff alleges that, from the outset of her employment, most of her supervisors and male co-workers "exhibit[ed] hostility toward [her] with racial overtones" and often referred to her as a "bitch."  Id. at ¶ 7.  Defendant denies the allegations of a hostile work environment and all claims of race and sex discrimination.  It asserts that all disciplinary actions taken against Plaintiff were the result of "her persistent substandard job performance."  Motion at 2.

On November 2, 2007, Plaintiff filed this action alleging that

Defendant illegally instituted disciplinary measures against her based on her race and sex.  Specifically, she pleads (1) violations of her civil rights under 42 U.S.C. § 1981, (2) race discrimination in violation of the Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12940, et seq., (3) sex discrimination in violation of FEHA, (4) retaliation in violation of FEHA and (5) harassment in violation of FEHA.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

United States District Court
For the Northern District of California

1    (1986).

2        Where the moving party does not bear the burden of proof on an

3    issue at trial, the moving party may discharge its burden of

4    production by either of two methods:

5        The moving party may produce evidence negating an
         essential element of the nonmoving party's case, or,
6        after suitable discovery, the moving party may show that
         the nonmoving party does not have enough evidence of an
7        essential element of its claim or defense to carry its
         ultimate burden of persuasion at trial.
8
     Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d
9
     1099, 1106 (9th Cir. 2000).
10
         If the moving party discharges its burden by showing an
11
     absence of evidence to support an essential element of a claim or
12
     defense, it is not required to produce evidence showing the absence
13
     of a material fact on such issues, or to support its motion with
14
     evidence negating the non-moving party's claim.  Id.; see also
15
     Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v.
16
     NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the
17
     moving party shows an absence of evidence to support the non-moving
18
     party's case, the burden then shifts to the non-moving party to
19
     produce "specific evidence, through affidavits or admissible
20
     discovery material, to show that the dispute exists."  Bhan, 929
21
     F.2d at 1409.
22
         If the moving party discharges its burden by negating an
23
     essential element of the non-moving party's claim or defense, it
24
     must produce affirmative evidence of such negation.  Nissan, 210
25
     F.3d at 1105.  If the moving party produces such evidence, the
26
     burden then shifts to the non-moving party to produce specific
27
     evidence to show that a dispute of material fact exists.  Id.
28

United States District Court
For the Northern District of California

8

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  <u>Id.</u> This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  <u>Id.</u> at 1107.

DISCUSSION

I.   The 2002 General Release and Statute of Limitations

Plaintiff concedes that she may not seek recovery for any claims that accrued prior to December, 2002, when she signed an agreement which released any and all claims related to her charges of discrimination and retaliation with the EEOC and the PUC.

The statute of limitations for § 1981 claims is governed by California's law for personal injury torts or the four-year catchall provision of 28 U.S.C. § 1658(a).  The four-year catchall provision is limited to claims that do not "allege a violation of the pre-1990 version of Section 1981 but [do] allege violations of the amended statute." <u>Jones v. R.R. Donnelley Sons & Co.</u>, 541 U.S. 369, 383.

Here, Plaintiff's § 1981 claims for disparate treatment are based upon the pre-1990 version of § 1981.  Therefore, California's two-year statute of limitations for personal injury actions governs this claim. <u>See</u> Cal. Civ. Proc. Code § 335.1.  However, Plaintiff's § 1981 claims for retaliation and harassment are subject to the four-year catchall limitations   provision.

Plaintiff filed her complaint on November 2, 2007.  Her claim for disparate treatment is limited to those actions that occurred on or after November 2, 2005.  Her claim for retaliation and harassment are limited to those actions that occurred on or after

**United States District Court**
For the Northern District of California

1   November 2, 2003.

2   I.   Discrimination Claims

3        Defendant moves for summary adjudication of Plaintiff's claims

4   for violation of 42 U.S.C. § 1981 and California's Fair Employment

5   and Housing Act, on the grounds that Plaintiff (1) offered no

6   evidence suggesting that Defendant acted with a discriminatory

7   motive and (2) failed to rebut Defendant's legitimate, non-

8   discriminatory reasons for disciplining and terminating her.

9        A.   Applicable Law

10       In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973),

11  and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248

12  (1981), the Supreme Court established a burden-shifting framework

13  for evaluating the sufficiency of a plaintiff's evidence in

14  employment discrimination suits.  The same burden-shifting

15  framework is used when analyzing claims under FEHA.  Bradley v.

16  Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996).  Within

17  this framework, plaintiffs may establish a prima facie case of

18  discrimination by reference to circumstantial evidence; to do so,

19  plaintiffs must show that they are members of a protected class;

20  that they were qualified for the position they held or sought; that

21  they were subjected to an adverse employment decision; and that

22  they were replaced by someone who was not a member of the protected

23  class or that the circumstances of the decision otherwise raised an

24  inference of discrimination.  St. Mary's Honor Center v. Hicks, 509

25  U.S. 502, 506 (1993) (citing McDonnell Douglas and Burdine).  Once

26  a plaintiff establishes a prima facie case, a presumption of

27  discriminatory intent arises.  Id. To overcome this presumption,

28  the defendant must come forward with a legitimate, non-

10

United States District Court
For the Northern District of California

discriminatory reason for the employment decision.  Id. at 506-07.
If the defendant provides that explanation, the presumption
disappears and the plaintiff must satisfy his or her ultimate
burden of persuasion that the defendant acted with discriminatory
intent.  Id. at 510-11.

     In order to do so, the plaintiff must produce "specific,
substantial evidence of pretext."  Steckl v. Motorola, Inc., 703
F.2d 392, 393 (9th Cir. 1983).  To survive summary judgment, the
plaintiff must introduce evidence sufficient to raise a genuine
issue of material fact as to whether the reason the employer
articulated is a pretext for discrimination.  The plaintiff may
rely on the same evidence used to establish a prima facie case or
put forth additional evidence.  See Coleman v. Quaker Oats Co., 232
F.3d 1271, 1282 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26
F.3d 885, 892 (9th Cir. 1994).  "[I]n those cases where the prima
facie case consists of no more than the minimum necessary to create
a presumption of discrimination under McDonnell Douglas, plaintiff
has failed to raise a triable issue of fact."  Wallis, 26 F.3d at
890.  "[T]he plaintiff 'must tender a genuine issue of material
fact as to pretext in order to avoid summary judgment.'"  Id.
(quoting Steckl, 703 F.2d at 393).  To do so, "the plaintiff need
produce very little evidence of discriminatory motive to raise a
genuine issue of fact."  Lindahl v. Air France, 930 F.2d 1434, 1438
(9th Cir. 1991).

     "'[S]tray' remarks are insufficient to establish
discrimination."  Merrick v. Farmers Ins. Group, 892 F.2d 1434,
1438 (9th Cir. 1990).  An "employee's subjective personal judgments
of her competence alone do not raise a genuine issue of material

fact." <u>Bradley</u>, 104 F.3d at 270 (citing <u>Schuler v. Chronicle Broad. Co.</u>, 793 F.2d 1010, 1011 (9th Cir. 1986)).

The Ninth Circuit has instructed that district courts must be cautious in granting summary judgment for employers on discrimination claims.  <u>See</u> <u>Lam v. University of Hawai'i</u>, 40 F.3d 1551, 1564 (9th Cir. 1994) ("'[w]e require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry"-- one that is most appropriately conducted by the factfinder'") (quoting <u>Sischo-Nownejad v. Merced Cmty. Coll. Dist.</u>, 934 F.2d 1104, 1111 (9th Cir. 1991)).

    B.   Analysis

        1.  <u>Prima Facie</u> Case

Plaintiff argues that she has shown sufficient circumstantial evidence related to Defendant's decision to discipline and terminate her to raise an inference of discrimination.  Plaintiff avers that the fact that she has been disciplined so often at work is evidence that these disciplinary actions are unwarranted and that they must therefore have been based on race and sex discrimination.  To prove the causal connection between the race and sex discrimination and her adverse employment actions Plaintiff points to the declarations of four African American PUC employees who assert that they have experienced similar discrimination at the workplace.  Dec. of Clarence Williams, Brian Hill, Adrienne Hogan and Estelle Yancey.  The Court has reviewed these declarations and determined that they do not support Plaintiff's contention that her disciplinary measures resulted from race or sex discrimination. They do not describe specific instances of race or sex

United States District Court
For the Northern District of California

discrimination and they do not describe how Defendant discriminated against Plaintiff in any way. A juror could not reasonably find, based on these declarations, the existence of any circumstance raising the inference that Plaintiff was disciplined due to her race or sex. See Steckl, 703 F.2d at 393 (holding mere assertions that an employer had a discriminatory motivation to be inadequate, in the absence of substantial factual evidence, to preclude summary judgment). Therefore, the Court finds that Plaintiff has not presented sufficient evidence of discrimination to establish a prima facie claim under § 1981 or FEHA.

            2.   Evidence of Pretext

      Even if a triable issue of fact did exist regarding whether the circumstances surrounding Plaintiff's adverse employment actions raise an inference of discrimination, Plaintiff has also failed to raise a dispute of fact on the issue of pretext. Defendant has shown that legitimate concerns over the quality of Plaintiff's job performance motivated each disciplinary action. Plaintiff claims that men are disciplined differently than women and African Americans disciplined differently than Caucasians, but she doesn't support these claims with any specific facts about instances of disparate treatment. Plaintiff's speculation that each act of discipline was motivated by race or sex discrimination does not constitute "specific, substantial evidence" that Defendant's actions were pretextual. Steckl, 703 F.2d at 393. Therefore, Plaintiff has not identified for the Court evidence sufficient to raise a genuine issue of material fact as to whether the reasons Defendant articulated are a pretext for discrimination.

United States District Court
For the Northern District of California

II.  Retaliation Claim

Defendant moves for summary adjudication of Plaintiff's retaliation claim on the ground that Plaintiff cannot establish that Defendant's legitimate reasons for its actions are pretextual.

In order to establish a prima facie claim for retaliation under § 1981 and FEHA, a plaintiff must show that (1) she engaged in protected activity, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action.  <u>Passantino v. Johnson & Johnson Consumer Prods., Inc.</u>, 212 F.3d 493, 506 (9th Cir. 2000).

Without pointing to specific instances of how a measure taken against her was retaliatory, Plaintiff asserts that all of Defendant's "actions were blatantly retaliatory in response to [Defendant's] career long discrimination against her because of her race, color and sex."  Opposition at 23.  Such a blanket assertion does not constitute sufficient evidence to withstand a motion for summary judgment.  Therefore, Plaintiff has not raised a genuine issue of material fact as to whether Defendant illegally retaliated against her.

III.  Hostile Work Environment Claim

Defendant moves for summary adjudication of Plaintiff's hostile environment claims under FEHA on the grounds that Plaintiff cannot demonstrate that the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment.

A.  Applicable Law

In order to demonstrate the <u>prima facie</u> elements of a hostile work environment, a plaintiff must raise a triable issue of fact as

14

to whether (1) she was subjected to verbal or physical conduct because of her national origin or religion; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.  Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003) (citing Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002)).  A plaintiff must show that the work environment is abusive from both a subjective and an objective point of view.  Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)).  In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Nichols v. Azteca Rest. Enters., 256 F.3d 864, 872 (9th Cir. 2001) (citation omitted).  If the alleged harasser is a co-worker rather than a supervisor, a plaintiff must show that "the employer knew or should have known of the harassment but did not take adequate steps to address it."  Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001).

California courts look to federal Title VII decisions in applying FEHA to racial harassment claims.  Etter v. Veriflo, 67 Cal. App. 4th 457, 464 (1999).

B.  Analysis

Plaintiff does not specifically describe how her workplace was "permeated with discriminatory intimidation, ridicule and insult." Opposition at 23.  Rather, she states, in a conclusory fashion,

that her allegation is supported by "overwhelming credible evidence in the record." Id. at 24. Defendant mentions that Plaintiff's supervisor, on one occasion, commented that Plaintiff should "find[] a husband." Plf. Depo. 150:25-151:19. Defendant also describes how on another occasion, one of Plaintiff's co-workers mentioned that African Americans are "lazy and shiftless." Id. at 134:20-24. In another instance, one of Plaintiff's supervisors, Gary Tensfeldt, used a racial slur but it was not directed at Plaintiff. Id. at 140:15-24; 142:5-10; 143:4-144:21.[4] This supervisor was then counseled to cease using that language at work. Id. On another occasion, one of Plaintiff's co-workers, Paul Biscard, called Plaintiff a bitch after the two "got kind of into an exchange." Id. at 26:7-29:24. Plaintiff's supervisor responded to this situation by ensuring Plaintiff that she would never have to work with Biscard again. Id. at 64:7-12. The supervisor also instituted disciplinary measures against Biscard for his conduct. Sutter Dec. ¶ 18.

The Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988). Although Plaintiff may have been offended by the above described incidents at work, they did not alter the conditions of her employment as a matter of law. When notified of these isolated instances of her co-workers' inappropriate behavior, Defendant took adequate steps to address it. Swinton, 270 F.3d at 803.

_____

[4]Although Defendant cites Plaintiff's deposition, neither party provided the Court with these portions of the deposition.

United States District Court
For the Northern District of California

Therefore, the Court grants Defendant's motion for summary

adjudication of Plaintiff's hostile work environment claim.[5]

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion

for Summary Judgment (Docket No. 26).[6]  Judgment shall enter

accordingly.  Defendant shall recover its costs from Plaintiff.

IT IS SO ORDERED.


Dated: 3/16/09
_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

---

[5]Because the Court grants Defendant's motion for summary
adjudication of all of Plaintiff's claims, it need not discuss
whether Defendant is also protected from liability under Monell v.
Department of Social Services, 436 U.S. 658 (1978).

[6]To the extent that the Court relied upon evidence to which
there is an objection, the parties' objections are overruled.  To
the extent that the Court did not rely on such evidence, the
parties' objections are overruled as moot.